# AGREEMENT AND GENERAL RELEASE

This Agreement and General Release ("Agreement") is made this __ day of March, 2015, by between and among: ANGEL RAMOS (hereafter referred to as "Releasor"); and HEIGHTS REALTY, CO., LLC, ("Heights" or "Releasee"); The term Releasee herein includes each, every and any entity affiliated with Releasee, as well as their agents, employees, elected officials, officers, successors, and assigns, both individually and in their official capacities, and thereby includes all such persons affiliated with Releasees.

In return for the good and sufficient consideration set forth below, the Releasor and Releasee (jointly referred to herein as "the Parties") hereto agree to the following:

1. Heights shall pay Releasor a total gross sum of twenty thousand four hundred sixty and 00/100 dollars ($20,460.00), paid as follows:

    A. Within twenty-one (21) days of Releasor's execution of this Agreement and General Release and delivery of same to Releasee's counsel, Heights shall issue two (2) checks totaling the gross amount of net and gross amount of twenty thousand four hundred sixty and 00/100 dollars ($20,460.00).

    i) One check shall be payable to the Abdul Hassan Law Group, PLLC, in the gross and net amount of Ten Thousand, Four Hundred and Sixty Dollars ($10, 460.00), representing legal fees (16.67hrs x $600/hr) and cost ($460). The Abdul Hassan Law Group, PLLC must first provide Releasee's counsel with its tax identification number, so that Heights may issue an IRS form 1099-MISC (Box 14) to The Abdul Hassan Law Group, PLLC.

ii) One check shall be payable to Angel Ramos in the gross amount of Ten Thousand and 00/100 Dollars ($10,000.00). This is paid entirely in response to Releasor's claim that his goods were wrongfully detained and disposed of, and as reimbursement therefore, and therefore they will not be reduced by appropriate withholding taxes, although a 1099 form may be issued concerning this payment, if required.

iii) Releasess knowingly and voluntarily releases and forever discharges Releasor of and from any and all claims, whether known and/or unknown, it has or may have against Plaintiff as of the date of execution of this Agreement,

2. In return for the consideration described above, Releasor releases and forever discharges Releasee, its agents, employees, successors, and assigns, and all affiliated business entities, both individually and in their official capacities, from any and all claims, causes of action, suits, back-wages, benefits, attorneys' fees, pain and suffering, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, charges, complaints and demands whatsoever, in law, or equity, of any and every kind, nature and character, known or unknown, arising out of Releasor's employment with Run, which against Releasee, Releasor, his heirs, executors, administrators, agents, successors, and assigns, ever had, may now have or hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever including, but not limited to, those arising under any federal, state or local, human or civil rights, wage-hour, or labor laws and/or regulations, contract or tort laws, including, but not limited to:

688849-1

2

- all Claims arising out of Releasor's employment/attempted employment with Releasee, under: *Title VII of the Civil Rights Act of 1964; as the Civil Rights Act of 1991; the Age Discrimination in Employment Act of 1967*, 29 USC §621, *et seq.; the Older Worker Benefit Protection Act* 29 U.S.C. §626(f); *the Rehabilitation Act; the Equal Pay Act; the Employee Retirement Income Security Act of 1974*, as amended, 29 U.S.C. § 1001 et seq.; *the Worker Adjustment and Retraining Notification Act of 1988*, 29 U.S.C. § 2101 et seq.;, *the Americans with Disabilities Act*, 42 U.S.C. § 12101 et seq.; *the Family and Medical Leave Act of 1993*, 28 U.S.C. §§ 2601 and 2611 et seq. and any amendments or modifications thereto; *the New York Human Rights Law; the New York Executive Law; the New York City Administrative Code and Civil Rights Laws;* and any other laws against employment discrimination in any state or locality; *the New York Whistleblower Law (New York Labor Law §740, et seq.; the anti-discrimination and anti-retaliation provisions of the New York Worker's Compensation laws (e.g., §120) and of the Sarbanes-Oxley law;* Sections 1981-1988 of *Title 42 of the United States Code; the Fair Credit Reporting Act; the Immigration Reform Control Act*; any amendments to the statutes referred to herein; and any other federal, state or local

688849-1

3

law relating to employment discrimination, unlawful harassment or retaliation, human or civil rights, employment protection or standards of any kind or nature;

- all Claims arising out of Releasor's employment/attempted employment with Releasee and/or receipt of premises from Releasee, alleging: unlawful detention of property, conversion; breach of promise, breach of contract or implied contract; fraud; misrepresentation; fraudulent inducement; promissory estoppel; unjust enrichment; quantum meruit; conversion; negligence; recklessness or personal injury; defamation; or otherwise arising under any common law theory or in tort, contract or quasi-contract, whether in law or equity;

- all Claims arising under or concerning: *The Fair Labor Standards Act,* 29 U.S.C. § 201 et seq. *Article 6 or Sections 190-198 of New York Labor Law*, and any similar federal law or law of any state or locality; sales commissions earned or accrued, whether as an employee or independent contractor; any costs, damages, interest, liquidated damages or attorneys' fees relating to any such alleged violation; allegedly unpaid wages, salary, or overtime compensation; employee classification; exempt classification; "at-will" classification; or

688849-1

4

any other asserted basis for additional remuneration or other rewards;

- all Claims for: fringe benefits; employee benefits; employee contributions; supplemental benefits; allowances; reimbursement; participation in any benefit plan; administration or application of any benefit plan; and any claims for non-vested benefits arising under ERISA;

- all Claims arising out of Releasor's employment/attempted employment with Releasee, for: costs, fees or attorneys' fees (other than as provided for above); payment of income and employment taxes, except as to taxes withheld for Releasor's benefit pursuant to paragraph 1 above; and any other Claims arising or accruing up to the date each party hereto signs this Agreement as the result of any cause, matter or thing, of any kind or nature, against each other, their agents, successors and assigns, both individually and in their official capacities, from the beginning of the world to the date of this Agreement.

3. Releasor promises and represents that he will withdraw or otherwise seek to be discontinued, with prejudice, any and all outstanding administrative complaints or charges, filed with federal, state and local agencies/administrative bodies and will also withdraw or discontinue with prejudice all judicial actions, lawsuits, claims, counterclaims, demands, appeals or actions pending against Releasees, including, but not

688849-1

5

limited to the action pending in the United States District Court for the Eastern District of New York bearing Docket Number 2014 CV 04285; and will not accept any money from any internal or external administrative or judicial complaints, charges, lawsuits, claims, demands, appeals or actions of any kind based on Releasor's employment with Releasee through the date of this Agreement and General Release.

4. Nothing in this Agreement shall be construed to restrict any communications or participation Releasor may have with any agency of the United States government, subdivision thereto, or any State or Municipal government agency charged with the enforcement of any law. Releasor understands that although they are not prohibited from filing a charge or complaint against Releasee with any agency of the United States government, subdivision thereto, or any State or Municipal government agency charged with the enforcement of any law; by virtue of this Agreement, Releasor waives any right to recover monetary damages in any charge, complaint or lawsuit filed by Releasor or anyone else on Releasors' behalf.

5. Each party hereto agrees and understands that nothing contained in this Agreement and General Release is an admission by any party of any liability, breach of duty or unlawful conduct whatsoever or violation of any local, state or federal law, regulation or ordinance. To the contrary, each party specifically denies any wrongdoing whatsoever. In order to avoid wasting unnecessary time and expense and to reach an amicable resolution, each party hereto enters into this Agreement and General Release.

6. This Agreement and General Release may not be modified, altered or changed except upon express written consent of both Releasors and Releasees.

7. Releasor represents that he is and was advised to consult legal counsel regarding this Agreement and General Release and has done so. **Releasor must execute and return this Agreement and General Release by April 12, 2015, a date in excess of twenty-one (21) days from its delivery to him. Releasor acknowledges that he has been given twenty-one (21) days to consider this Agreement and General Release carefully, and fully understands and agrees to all of its terms. If the Agreement and General Release is not executed and returned by that date, it will be void** *ab initio.*

**Releasor may revoke this Agreement and General Release within seven (7) days of signing it.** This seven (7) day time period will begin to run the day after Releasor executes this Agreement and General Release. If Releasor revokes this Agreement and General Release, it shall be rescinded in its entirety and Releasor will not receive the benefits set forth herein. Said revocation must be in writing, and must be delivered by hand or by certified mail, return receipt requested, to Richard M. Howard, Esq. Meltzer, Lippe Goldstein & Breitstone, LLP, 190 Willis Avenue, Mineola, New York 11501 and received within seven (7) days of the execution of this Agreement and General Release. If this Agreement and General Release is not revoked, it shall become effective eight (8) days after execution. If the last day of the revocation period is a Saturday, Sunday or legal holiday, then the revocation period shall not expire until the following day which is not a Saturday, Sunday, or legal holiday.

8. This Agreement and General Release may be executed in counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute the same instrument.

9. All prior negotiations, agreements, and understandings of the parties are superseded by this Agreement and General Release.

10. No waiver or modification of any provision of this Agreement and General Release shall be valid unless in writing and signed by the parties.

11. Whenever used in this Agreement and General Release, the singular word shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders. This General Release shall not be interpreted in favor of, or against, either party because of such party having drafted this General Release.

12. This Agreement and General Release shall be subject to and governed by the laws of the State New York without giving effect to principles of conflicts of law.

13. If any term or provision of this Agreement and General Release, or the application thereof to any person or circumstance, shall to any extent be found invalid or unenforceable, the remainder of the Agreement and General Release, or the applications of such term or provisions to persons or circumstances other than to those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement and General Release shall be valid and be enforced to the fullest extent permitted by law.

14. Releasor agrees to execute any other instruments and/or documents that are reasonable or necessary to implement this Agreement and General Release.

IN WITNESS WHEREOF, Releasor and Releasee hereunto set their hands this __ day of March, 2014.

**Heights Realty Co., LLC.**                           **Angel Ramos**

688849-1

By_____          _____
    **Shimon Greisman, Member**


STATE OF NEW YORK
                      }SS:
COUNTY OF QUEENS

    On March  , 2015, before me personally came **Angel Ramos**, to me known, and who executed the foregoing Agreement and General Release, and duly acknowledged to me that he executed the same.

                                        _____
                                        Notary Public


STATE OF NEW YORK
                      } SS:
COUNTY OF KINGS

    On March  , 2015, before me personally came, **Shimon Greisman**, to me known, and who executed the foregoing Agreement and General Release, on behalf of **Heights Realty Co, LLC.**, as a member of said company and duly acknowledged to me that he executed the same upon the order of its members.

                                        _____
                                        Notary Public